**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. _____ 25-MJ-3168-LETT _____

FILED BY_____ TS _____ D.C.

**Jun 12, 2025**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

UNITED STATES OF AMERICA

v.

**ZACHERY BALDWIN and**
**DESMOND ROSS,**

    **Defendants.**

_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?   No

2. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?  No

3. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024?   No

4. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024?  No

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

By:   _/s/ Anthony Espino Reynolds_ _____
Anthony Espino Reynolds
Assistant United States Attorney
Florida Bar No. 118876
United States Attorney's Office
99 Northeast Fourth Street
Miami, FL 33132-2111
Telephone (305) 961-9389
Facsimile (305) 530-7976
Anthony.Reynolds@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT

### for the

Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. 25-MJ-3168-LETT |
| ZACKERY BALDWIN and | ) | |
| DESMOND ROSS, | ) | |
| | ) | |

*Defendants.*

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ June 11, 2025 _____ in the county of _____ Miami-Dade _____ in the

_____ Southern _____ District of _____ Florida _____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922(o)(1) | Possession of a machinegun |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Credential #100722
Conor S. Goepel, Special Agent FBI
_____
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by _____ Telephone _____

Date: _____ June 12, 2025 _____

_____
*Judge's signature*

City and state: _____ Miami, Florida _____

Honorable Enjoliqué A. Lett, United States Magisrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

Your Affiant, Conor S. Goepel, being duly sworn, deposes and states as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent for the Federal Bureau of Investigation ("FBI") currently assigned to the Violent Crimes/Fugitive Task Force in the Miami Division.  I have been an FBI Special Agent since 2021 and have been assigned to the Miami Division since February 2022.  I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of, and to make arrests for, federal offenses.  As a Special Agent for the FBI, my duties involve the investigation of a variety of violations of federal offenses, including, but not limited to, bank robberies, Hobbs Act robberies, extortion, murder for hire, and unlawful possession of firearms.

2.      I am currently a member of the South Florida Violent Crime Task Force.  As part of my professional duties and responsibilities, I have become familiar with the investigative methods and enforcement of violent crimes pertaining to state and federal laws.  I have also become versed in methodologies and practices employed by individuals and groups who commit violent crimes.

3.      The facts contained in this Affidavit are based on my personal knowledge and information provided to me by other law enforcement officers. This Affidavit is being submitted for the limited purpose of establishing probable cause for the proposed complaint, and as such does not contain every fact known to me.  I respectfully submit that based upon the facts presented below, there is probable cause to charge Zackery Baldwin, whose date of birth is December 15, 2002 ("BALDWIN"), and Desmond Ross, whose date of birth is July 4, 2006 ("ROSS"), with possession of a machine gun, in violation of Title 18, United States Code, Section 922(o).

**PROBABLE CAUSE**

4.      On or about June 11, 2025, federal and local law enforcement were conducting a joint investigation into violent criminal activity in Liberty City and Little Haiti, located in the greater Miami area.  Law enforcement were specifically investigating these neighborhoods in response to recent instances of violent criminal activity, including shootings, homicides, and drug trafficking activity.

5.      While in the area of the 200 block of NW 56th Street, an area known by law enforcement to be controlled by the street gang "Boss Life," law enforcement officers observed multiple individuals outside a residence located at 271 NW 56th Street, Miami, FL, 33127.  While observing the individuals from an unmarked vehicle, law enforcement observed one person—later identified as ROSS—clutch his waistband, crouch down, and then place an unknown item on the ground that law enforcement believed was a firearm, in an apparent attempt to discard it from his person.  Law enforcement subsequently advised additional law enforcement officers of ROSS's actions and requested additional assistance.

6.      After assistance arrived, law enforcement exited their vehicles out of eyesight from ROSS and his associates and approached the residence on foot.  Officers wore patches on the front and back of their bulletproof vests identifying themselves as law enforcement. Officers walked past several structures before approaching ROSS and the group of males accompanying him. As officers approached the residence, the distinct odor of marijuana was detected, emanating from the area ROSS and others were observed standing. Additionally, law enforcement observed large and small designer marijuana packaging.

7.      As law enforcement approached the individuals for a consensual encounter to investigate the marijuana and potential firearm, law enforcement observed another person—later

2

identified as BALDWIN—clutch his waistband area.  As they approached, law enforcement observed a protrusion through BALDWIN's shirt along the waistband area outlining the shape of a firearm.  Based on those officers' training and experience, they believed BALDWIN to possess a firearm based on the protrusion. In fact, the firearm, was easily identified due to the "extended" magazine it was equipped with.

8.      BALDWIN was given a lawful command to remove his hands from his waistband for officer safety.  BALDWIN did not comply with the command and continued to hold his waistband while simultaneously turning his body away from officers while still looking at them.

9.      In response to BALDWIN's action, law enforcement detained him and seized a Glock 19x, 9mm handgun (serial number: BPTC747) from his waistband.  The firearm was loaded with an extended magazine holding 26 live rounds, including one chambered within the weapon. The firearm had what appeared to be a machine gun conversion device attached, rendering the firearm fully automatic.

10.     At the same time BALDWIN was being detained, ROSS grabbed his own waistband and began to flee law enforcement on foot.  As officers gave chase to ROSS, who was given lawful commands to remain in place with his hands away from his waist, ROSS reached into his waistband and appeared to be attempting remove a firearm. ROSS continued to ignore the commands of the pursuing law enforcement officers. ROSS slowed his pace as he continued to conceal his hands in the front of his pants.

11.     As Officers closed in on ROSS to detain him, ROSS was again given loud verbal commands to "drop the gun," but ROSS did not comply. Law enforcement then approached ROSS, who began to violently resist by kicking the federal agents.  Law enforcement's attempts to secure ROSS in handcuffs were difficult as he attempted to maintain a grasp of the firearm located in his

3

pants. During the ensuing struggle over the firearm, ROSS kicked the federal agents several times. Law enforcement officers could feel the firearm fall down ROSS's pants. ROSS continued to ignore law enforcement's commands, but was eventually detained in handcuffs.

12.     As the struggle ensued, although law enforcement managed to bring ROSS to the ground, ROSS maintained hold of the handgun located in his front waistband.  Law enforcement issued repeated commands to ROSS to release the firearm and remove his hands from underneath his body, but ROSS continued to resist.   Eventually, ROSS's hands were forced out from underneath his body and he was detained.

13.     While detained in handcuffs, ROSS continued to kick officers as they attempted to remove the firearm off his person, which had dropped into his left pant leg during the violent struggle. Ross kicked law enforcement on their hands, chest, and legs.

14.     ROSS's firearm was seized off his person, and law enforcement discovered it to be a Glock 23, Gen 4, .40 caliber handgun with an obliterated serial number. The firearm had what appeared to be a machine gun conversion device attached, rendering the firearm fully automatic.

15.     Photos of the assaulted federal agents were taken after the struggle to document their appearance.  The photos show that the federal agents were wearing bulletproof vests with clearly marked "FBI" placards on their front and back.

16.     Once ROSS and BALDWIN were detained, law enforcement identified the other individuals with them as J.T., A.T., A.S., and R.P.  A third firearm was removed from J.T.'s waistband, a fourth firearm was removed from R.P's possession, and a fifth firearm was found concealed under a nearby sweatshirt within lunging distance.

17.     Law enforcement contacted the tenant of the 271 NW 56th Street residence, and the tenant reported ROSS and the other males are constantly smoking weed and are a nuisance. The

tenant of 271 NW 56th Street further reported that ROSS and the other males did not live at the residence and have been asked to leave several times. The tenant signed a consent to search form, authorizing law enforcement to search the patio where the now-detained individuals were observed.  During the search, aside from the fifth firearm that was recovered, law enforcement found the following items:

   a.  31 individual clear bags each containing suspected marijuana;

   b.  2 plastic cards with "Desmond Ross" displayed; and

   c.  1 handgun holster

18.     Law enforcement inspected the prepackaged clear bags of suspected marijuana and observed that each bag contained approximately the same amount of substance.  In my training and experience, illegal narcotics are often packaged in predetermined amounts inside small, clear plastic bags for sale and distribution.  The total weight of all suspected marijuana observed was 348.8 grams, or approximately 12.3 ounces.

19.     Law Enforcement inspected the firearms seized from the detained individuals and observed unlawful modifications to the firearms seized from ROSS and BALDWIN.  Both ROSS and BALDWIN's handguns were in fact equipped with machinegun "switches."  In my training and experience, "switches" are an aftermarket sear which applies force to the trigger bar, allowing the firearm to discharge continuous rounds with one trigger press.  The application of a "switch" to a firearm thus makes a semi-automatic weapon a machinegun or pistol.

20.     An agent working for the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), who is an expert in firearm nexus, confirmed that Glock firearms, like those recovered from BALDWIN and ROSS, are manufactured outside the State of Florida.  The ATF agent also concurred that the devices found affixed to ROSS and BALDWIN's firearms qualified as

machinegun-producing aftermarket "switches," allowing the firearms to fire more than one shot without manual reloading by a single function of the trigger. In addition to the "switch" observed on ROSS's firearm, Law Enforcement also discovered that the serial number had been removed, or obliterated.

21.     Open-source database checks reveal that Glock 19x firearms were first released in 2018 and Glock 23, Gen 4 firearms were first released in 2010.

## CONCLUSION

22.     Based upon the foregoing, I submit that there is probable cause for the proposed complaint charging Zackery Baldwin and Desmond Ross with possession of a machine gun, in violation of Title 18, United States Code, Section 922(o).

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
CONOR S. GOEPEL
SPECIAL AGENT   Credential #100722
FEDERAL BUREAU OF INVESTIGATION

Attested to by the applicant in accordance with the requirements of Fed.R.Crim.P. 4.1
by Telephone this 12th day of June 2025.

_____
HONORABLE ENJOLIQUÉ A. LETT
UNITED STATES MAGISTRATE JUDGE